UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SYED ALAMGIR AHMED,

                              Plaintiff,

    - against -

DOMINO'S PIZZA LLC, 3441 OSSINING PIZZA,
LLC, and ROB COOKSTON,

                              Defendants.
-------------------------------------------------------------x
ABDULLAH AL MAMUN,

                              Plaintiff,

    - against -

DOMINO'S PIZZA LLC, 3441 OSSINING PIZZA,
LLC, and ROB COOKSTON,

                              Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-3113 (CS)

No. 21-CV-3203 (CS)

Appearances:

Naresh M. Gehi
Gehi & Associates
Jamaica, New York
*Counsel for Plaintiffs*

Robin B. Kallor
Cindy M. Cieslak
Rose Kallor, LLP
Hartford, Connecticut
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' joint motion to compel arbitration as to Defendants 3441 Ossining Pizza, LLC ("3441") and Rob Cookston, or, in the alternative, to dismiss the amended complaints against Domino's Pizza LLC ("Domino's"), 3441, and Cookston (collectively,

"Defendants"), in both of the above-captioned cases. (Ahmed ECF No. 32; Al Mamun ECF No. 31.)[1] For the following reasons, Defendants' motion to compel is DENIED and their motion to dismiss is GRANTED.

I.     **BACKGROUND**

    A.     **Facts Relating to Claims**

For purposes of Defendants' motion to dismiss, I accept as true the facts, although not the conclusions, set forth in Plaintiffs' respective Amended Complaints.

Plaintiffs Syed Alamgir Ahmed and Abdullah Al Mamun bring claims against Defendants under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") to recover unpaid wages, overtime compensation, and compensation for work during meal breaks. (Ahmed ECF No. 19 ("Ahmed AC") ¶ 1; Al Mamun ECF No. 18 ("Al Mamun AC") ¶ 1.) 3441 owns and operates a Domino's store located in Ossining, New York, and Cookston owns and operates 3441. (Ahmed AC ¶¶ 11-12; Al Mamun AC ¶¶ 11-12.)[2]

Both Plaintiffs were employed by Defendants as delivery drivers – Ahmed from September 30, 2017 to March 21, 2021, (Ahmed AC ¶ 14), and Al Mamun from September 1, 2018 to March 28, 2021, (Al Mamun AC ¶ 14). Plaintiffs allege, upon information and belief,

---

[1] "Ahmed" refers to the docket entries in *Ahmed v. Domino's Pizza LLC*, No. 21-CV-3113 (S.D.N.Y. filed Apr. 9, 2021), and "Al Mamun" refers to the docket entries in *Al Mamun v. Domino's Pizza LLC*, No. 21-CV-3203 (S.D.N.Y. filed Apr. 13, 2021). "Ds' Mem." refers to Defendants' opening brief, (Ahmed ECF No. 33; Al Mamun ECF No. 32), "Ps' Opp." refers to Plaintiffs' opposition brief, (Ahmed ECF No. 34; Al Mamun ECF No. 34), and "Ds' Reply" refers to Defendants' reply brief, (Ahmed ECF No. 36; Al Mamun ECF No. 35), which were filed in both cases. Because Plaintiffs did not number the pages of their opposition brief, the page references for that document are to the numbers assigned by the Court's Electronic Case Filing ("ECF") system.

[2] According to Cookson, he is President of 3441 and owns 100% of the management company that owns 3441. (Ahmed ECF No. 33-8 ¶¶ 2-3.)

2

that during their employment, Defendants required Plaintiffs to transport other employees to and from their homes without compensation. (Ahmed AC ¶¶ 16, 18; Al Mamun AC ¶¶ 16, 18.) Plaintiffs also allege, on information and belief, that they were required to work in excess of 40 hours per week and did not receive minimum wage for hours worked, overtime compensation for overtime hours, or compensation for work done during time allowed for meals. (Ahmed AC ¶¶ 20-23; Al Mamun AC ¶¶ 20-23). According to Plaintiffs, Defendants did not maintain accurate or sufficient time sheets or payroll records, and did not post a notice explaining minimum wage and overtime rights under the FLSA. (Ahmed AC ¶¶ 24-25; Al Mamun AC ¶¶ 24-25.)

      **B.**      <u>**Facts Relating to Arbitration**</u>

In May 2020, 3441 revised its Employee Handbook, (ECF No. 33-1 (the "Handbook")),³ and, sometime between May and August 20, 2020, distributed it to Plaintiffs in both English and Bengali. (ECF No. 33-7 ("Uddin Decl.") ¶¶ 4-6.)⁴ The introductory letter at the front of the

---

³ Docket references are to *Ahmed*, No. 21-CV-3113, unless otherwise noted.

⁴ I consider the exhibits attached to the parties' briefs only to the extent they relate to the motion to compel arbitration. "Courts deciding motions to compel [arbitration] apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up). This means that the Court "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.* (cleaned up). In contrast, when deciding a motion to dismiss under Rule 12(b)(6):

> a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint; mere notice or possession is not enough. And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the

3

Handbook is written and signed by Cookston.  (Handbook at 2; ECF No. 34-4 at 1.)[5]  Both the English and Bengali versions of the Handbook contain an Agreement to Arbitrate (the "Arbitration Agreement"), (Uddin Decl. ¶¶ 8-9), which provides:

> The Employee and the Company (collectively the "Parties") agree to resolve any and all claims, disputes, or controversies arising out of or relating to Employee's application for employment, Employee's employment with the Company, and/or termination of employment exclusively by final and binding arbitration to be administered by a neutral dispute resolution agency agreed upon by the Parties at the time of the dispute.

(Handbook at 32; ECF No. 36-1 ("Translation") at 3 ("Employees and organizations (collective 'parties') agree to direct the parties to a neutral dispute resolution agency to resolve any claims, disputes or disputes involving the hiring of Employees or the termination of employment by the Company's Employees or through final and binding mediation only.").)[6]  The Arbitration Agreement states that its terms are "effective upon receipt by the Employee," (Handbook at 34), which in the Bengali version reads, "This Agreement shall enter into force upon acceptance by the Employees, and both parties agree that the employment of the Employee shall proceed in accordance with this Agreement," (Translation at 5).

The last page of the Handbook is labeled "Employee Handbook Acknowledgement and Receipt" (the "Acknowledgement") and includes space for the employee's signature and the

---

> document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (cleaned up), *cert. denied*, 212 L. Ed. 2d 764 (U.S. May 2, 2022) (No. 21-1314).  A court may also consider matters "of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

[5] References to the Handbook use the pagination generated by the Court's ECF System.

[6] ECF No. 36-1 is an English translation, supplied by Defendants, of the Handbook that was provided to Plaintiffs in Bengali.  Page references for that exhibit are to the numbers assigned by the Court's ECF system.

4

date. (Handbook at 39.) The first sentence of the Acknowledgement reads, "I have received a copy of the Company's employee handbook and I understand it is my responsibility to read the handbook, understand its contents and abide by the rules and regulations maintained within it." (*Id.*) The last sentence of the third paragraph states, "I further acknowledge that this manual, with the exception of the agreement to arbitrate, does not constitute, nor is it intended to constitute, a contract of any kind." (*Id.*) But, due to what appears to be a mistranslation, the Translation states the opposite: "I further acknowledge that this summary text does not constitute an arbitration agreement." (Translation at 9.)

Further, the fifth paragraph of the Acknowledgement, which immediately precedes the signature line, states in bold, capital letters,

> **I UNDERSTAND THAT THIS HANDBOOK IS NOT AND WAS NOT INTENDED TO SERVE AS A CONTRACT BETWEEN COMPANY AND MYSELF REGARDING THE NATURE OR DURATION OF MY EMPLOYMENT WITH COMPANY, EXCEPT THAT THIS HANDBOOK IS OUR ENTIRE AGREEMENT CONCERNING EACH PARTY'S RIGHT TO ARBITRATE EMPLOYMENT DISPUTES AND TO TERMINATE THE EMPLOYMENT RELATIONSHIP WITH OR WITHOUT CAUSE AT ANY TIME, AND THAT NO ONE AT COMPANY IS AUTHORIZED TO MAKE AN EXCEPTION TO THIS UNDERSTANDING, EXCEPT ROBERT COOKSTON, WHO DOES SO IN WRITING.**

(Handbook at 39.) The translated version of the Acknowledgement states in lowercase bold letters,

> **I understand that this Handbook is not intended to be reserved for my employment or expiration of employment with the Company or as a contract between the Company and myself; this Handbook defines the right to hire and terminate the staff of each department of our full Contract Recruitment with employment or for any other reason. It is related and does not allow any company to exclude this insight and does not allow any company other than Robert Cookston's writing to exclude this insight.**

(ECF No. 34-3 at 2; *see* Translation at 9 ("I understand that this Handbook is not intended to be a matter of my employment or expiration with the Company, or to be kept as an agreement between the Company and myself. It relates to and does not authorize any company to exclude

this introspection and does not authorize any company other than Robert Cookston's writings to exclude this introspection.").)[7]

On August 20, 2020, Plaintiffs executed their respective copies of the English translation of the Acknowledgement. (ECF Nos. 33-3, 33-4.)

### C. Procedural History

Plaintiffs Ahmed and Al Mamun filed their original complaints on April 9 and April 13, 2021, respectively. (Ahmed ECF No. 1; Al Mamun ECF No. 1.) On June 1, 2021, Defendants filed pre-motion letters in both cases in anticipation of their motions to compel arbitration or, in the alternative, dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Ahmed ECF No. 14; Al Mamun ECF No. 13.) Given the relatedness of the cases, I held a joint pre-motion conference on June 23, 2021, at which I granted Plaintiffs leave to amend their complaints. (*See* Ahmed Minute Entry dated June 23, 2021; Al Mamun Minute Entry dated June 23, 2021.) Plaintiffs filed their Amended Complaints on July 8, 2021, (Ahmed AC; Al Mamun AC), and the instant joint motions followed, (Ahmed ECF No. 32; Al Mamun ECF No. 31).

## II. LEGAL STANDARDS

### A. Motion to Compel Arbitration

Arbitration clauses are subject to the Federal Arbitration Act, which "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). When deciding whether claims are subject to arbitration, courts generally conduct a two-part test, whereby they consider (1)

---

[7] ECF No. 34-3 is an English translation of the Bengali Acknowledgement, provided by Plaintiffs. It appears to be more complete than the Bengali version provided by Defendants in the Translation. Unlike the English version, neither Bengali version carves out the Arbitration Agreement from the disclaimer that states that the Handbook does not create a contract.

6

whether "the parties enter[ed] into a contractually valid agreement to arbitrate," and, if so, (2) whether "the parties' dispute fall[s] within the scope of the arbitration agreement." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). "Unlike the enforceability or applicability of an arbitration agreement, which may be delegated to an arbitrator, questions regarding the formation of the parties' arbitration agreement must be decided by a court." *Cota v. Art Brand Studios, LLC*, No. 21-CV-1519, 2021 WL 4864588, at *8 (S.D.N.Y. Oct. 15, 2021) (cleaned up). "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). The party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (cleaned up). Once the moving party establishes a *prima facie* showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).

      **B.**    <u>**Motion to Dismiss for Failure to State a Claim**</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In deciding a motion to dismiss under Rule 12(b)(6), a court reviews the complaint "liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

#### A. Motion to Compel Arbitration

Defendants move to compel arbitration of the claims against 3441 and Cookston based on the Arbitration Agreement in the Handbook.

To establish a *prima facie* showing that an agreement to arbitrate exists, the party seeking arbitration must prove by a preponderance of the evidence that all the elements necessary to form

a valid contract are met, namely "offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (cleaned up). "Mutual assent requires, in turn, a meeting of the minds of the parties, and if there is no meeting of the minds on all essential terms, there is no contract." *Prince of Peace Enters., Inc. v. Top Quality Food Mkt.*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (cleaned up).

"Courts have routinely upheld arbitration agreements contained in employee handbooks where the employee has signed an acknowledgment form." *Gil v. Bensusan*, No. 18-CV-10657, 2019 WL 12334706, at *3 (S.D.N.Y. Oct. 30, 2019) (cleaned up) (parties agreed to arbitrate because employee signed acknowledgement form that stated that he received employee handbook and "received and read" Consent to Arbitration form within it); *see Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) ("[T]he parties' agreement to arbitrate is evidenced by the Employee Handbook and the Acknowledgment signed by plaintiff."). Here, the Handbook contained the Arbitration Agreement, and Plaintiffs signed the Acknowledgement stating that they had received a copy of the Handbook and that they understood it was their responsibility to understand its contents. (ECF Nos. 33-3, 33-4.)

Plaintiffs challenge the validity of the contract on the ground that the Arbitration Agreement was misrepresented to Plaintiffs in the Bengali translation, which explicitly stated that the agreement was not binding. (Ps' Opp. at 10-12.)[8] Defendants argue that "errors in

---

[8] Plaintiffs also challenge the existence of a valid contract on the ground that the Arbitration Agreement lacks mutuality and is illusory because the Acknowledgement gives Cookston sole discretion to alter the terms of the agreement. (Ps' Opp. at 9-10; *see* Handbook at 39 ("**NO ONE AT COMPANY IS AUTHORIZED TO MAKE AN EXCEPTION TO THIS UNDERSTANDING, EXCEPT ROBERT COOKSTON, WHO DOES SO IN WRITING.**").) But "[u]nder New York law, a contract is not illusory merely because its terms give discretion to one party to the contract, as every contract encompasses the implied duty of good faith and fair dealing." *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84 (2d Cir. 2013)

9

translation do not render an arbitration agreement void," citing a California state court case that considers a similar question under California contract law. (Ds' Reply at 4-5 (citing *Western Bagel Co., Inc. v. Super. Ct.*, 281 Cal. Rptr. 3d 329 (Cal. App. Dep't Super. Ct. 2021)).) Under New York contract law, however, "'if the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void.'" *Solis v. ZEP LLC*, No. 19-CV-4230, 2020 WL 1439744, at *4 (S.D.N.Y. Mar. 24, 2020) (quoting *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 163 (1930)). If Plaintiffs do not understand English and relied exclusively on the Bengali translation of the Acknowledgement, the contents of the Arbitration Agreement were misrepresented and the contract is void. But Defendants assert that Plaintiffs understand English, as demonstrated by text messages attached to Plaintiffs' opposition brief, (ECF No. 34-7; ECF No. 34-15 at 12-21), and so they understood the contents of the English version of the Acknowledgement that they signed, (Ds' Reply at 6). Without a hearing to determine the extent to which Plaintiffs understand English and whether they in fact relied on the Bengali translation, I cannot rule as to whether the Arbitration Agreement is void. But I need not address this issue, because Plaintiffs have failed to allege viable claims under the FLSA, as explained below.⁹

---

(cleaned up). Further, Plaintiffs do not allege that Cookston even contemplated using his exclusive discretion to modify the Arbitration Agreement during Plaintiffs' employment and "[t]here is thus no showing that the defendants acted unreasonably or in bad faith with respect to the purported unilateral modification provisions of the [Arbitration Agreement]." *Woo Jung Cho v. Cinereach Ltd.*, No. 19-CV-513, 2020 WL 1330655, at *5 (S.D.N.Y. Mar. 23, 2020).

⁹ Accordingly, I also need not address whether Cookston, a non-signatory to the Arbitration Agreement, may enforce the contract through arbitration.

B. **Motion to Dismiss**

Defendants move to dismiss Plaintiffs' unpaid overtime and wage claims on the ground that Plaintiffs fail to allege facts beyond the threadbare recitals of the elements of the claims. I agree.

As a threshold matter, most of the significant facts in the Amended Complaints are alleged "upon information and belief." Pleading on information and belief can be appropriate if the specifics are not within the party's knowledge or control, *see Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), but where the information is within the party's knowledge and control, the Court is not required to accept such allegations as true, *see McDay v. Eckert*, No. 20-CV-233, 2021 WL 4994093, at *5 n.8 (W.D.N.Y. June 25, 2021), *report and recommendation adopted*, 2021 WL 4350510 (W.D.N.Y. Sept. 24, 2021). Facts such as how many hours an individual worked and what he was paid and whether he got meal breaks are well within that party's knowledge, so I do not understand why such facts are pleaded on information and belief in this case. But even if I disregard this deficiency, Plaintiffs still fail to state valid claims.

1. **FLSA Overtime Claims**

The FLSA requires that employees who work more than 40 hours per week be compensated for overtime work at a rate of one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1). To allege an FLSA overtime claim, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

"To satisfy this standard, plaintiffs are not required to keep careful records and plead their hours with mathematical precision, but they are required to draw on their memory and experience to provide complaints with sufficiently detailed factual allegations." *Coker v.*

*Goldberg & Assocs. P.C.*, No. 21-CV-1803, 2022 WL 874719, at *3 n.2 (S.D.N.Y. Mar. 24, 2022) (cleaned up) (standard met where plaintiff "specifically alleges the number of hours she worked overtime for each of the weeks she worked for Defendants"); *see Fridman v. GCS Computers LLC*, No. 17-CV-6698, 2018 WL 1581990, at *4 (S.D.N.Y. Mar. 27, 2018) (standard not met where "the only allegations relating to overtime in the complaint are when Plaintiff alleges that he 'routinely' worked a total of ten or more hours over forty hours per week" and "at no point in the complaint does Plaintiff allege a single particular week he worked more than forty hours or attempt to estimate the number of overtime hours he worked in any of the weeks employed"); *Johnson v. Equinox Holdings, Inc.*, No. 13-CV-6313, 2014 WL 3058438, at *4 (S.D.N.Y. July 2, 2014) (standard not met where plaintiff alleged that he "typically worked between twenty one and fifty hours per week, with an additional three to four hours off the clock") (cleaned up).

In both Amended Complaints, Plaintiffs allege only that "[u]pon information and belief, Plaintiff was regularly required to perform work in the excess of 40 hours per week," (Ahmed AC ¶ 20; Al Mamun AC ¶ 20), and "[u]pon information and belief, while working for Defendants, Plaintiffs was [*sic*] regularly required to perform work for Defendants without receiving overtime compensation of one and one-half times their regular rate of pay as required by federal and state laws," (Ahmed AC ¶ 22; Al Mamun AC ¶ 22). These conclusory allegations do not reach the level of specificity required to state a cognizable claim under *Lundy* and its progeny. *See, e.g.*, *Henao v. Parts Auth., LLC*, No. 19-CV-10720, 2020 WL 5751175, at *3 (S.D.N.Y. Sept. 25, 2020) (dismissing FLSA overtime claim where plaintiffs fail to provide

estimate of weekly hours of three plaintiffs and does not provide other "factual context or content" for claims).[10]

### 2. FLSA Minimum Wage Claim

The FLSA requires employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week, *see* 29 U.S.C. § 206(a)(1) – at least the federal minimum wage for every hour worked, *see id.*, or the state minimum wage, if it is greater than the federal minimum wage, *see id.* § 218(a).

To state a minimum wage claim, "it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period." *Serrano v. I. Hardware Distrib., Inc.*, No. 14-CV-2488, 2016 WL 1441469, at *2 (S.D.N.Y. Apr. 7, 2016) (cleaned up). "Conclusory allegations that a defendant failed to pay a plaintiff for all hours worked or that a plaintiff's effective hourly wage fell below the minimum wage do not create a plausible claim." *Henao*, 2020 WL 5751175, at *4.

In both Amended Complaints, Plaintiffs allege that "[u]pon information and belief, at the Defendants' direction, Defendants required Plaintiff to transport Defendants' employees to and from Defendants' employees' homes to Defendants place of business," (Ahmed AC ¶ 16; Al

---

[10] As Defendants note, the only factual context for Plaintiffs' claims is improperly offered through the attachment to their opposition brief of text messages, work schedules, and pay stubs, (*see* ECF Nos. 34-7, 34-8, 34-9, 34-15), which I cannot consider on a motion to dismiss as they are neither incorporated in nor integral to the Amended Complaint. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. Feb. 9, 2010). Even if I were to consider those documents, they do not show the existence of any week in which either Plaintiff worked more than 40 hours and was not paid for the overtime.

Mamun AC ¶ 16),[11] and "[u]pon information and belief, Plaintiff was regularly required to perform work for Defendants without receiving minimum wages from Defendants for all hours worked by them," (Ahmed AC ¶ 21; Al Mamun AC ¶ 21).  But Plaintiffs fail to allege the amount they were paid, how many hours they worked per week, and how much time or money was spent transporting their coworkers to and from work.[12]  Plaintiffs provide only conclusory allegations, which are insufficient to plead a minimum wage claim under the FLSA.  *See Bustillos v. Acad. Bus, LLC*, No. 13-CV-565, 2014 WL 116012, at *2 (S.D.N.Y. Jan. 13, 2014) (where plaintiff alleged he was not paid for all hours worked but provided no facts about the unpaid hours, court could "only speculate as to the factual basis of this claim," and it was appropriately dismissed).[13]

To the extent Plaintiffs intend to bring a stand-alone FLSA claim for unpaid wages for the off-the-clock work of driving their coworkers, that claim is dismissed.  The FLSA does not provide a remedy for off-the-clock hours below 40 in a week unless the unpaid hours diluted the hourly wage to below the minimum wage, *Trinidad v. Pret a Manger (USA) Ltd.*, 962 F. Supp.

---

[11] Despite Defendants' argument to the contrary, (*see* Ds' Mem. at 18-19), Plaintiffs' claims regarding unpaid wages for the time spent carpooling coworkers at Defendants' request is not necessarily barred by the Portal-to-Portal Act, 29 U.S.C. § 254.  "[I]f [Plaintiffs] can establish that [they were] required to pick up the other employees and that the arrangement was primarily for the benefit of [their] employer, [they] may be able to recover compensation for the time, if any, that the pickups added to [their] commute." *Kim v. DK Cosms.*, No. 19-CV-9079, 2022 WL 540675, at *5 (S.D.N.Y. Feb. 23, 2022).  But because Plaintiffs have failed to allege an unpaid wage claim, I need not address whether Plaintiffs have satisfied this standard, except to note that Plaintiffs provide no information as to whether the carpooling added appreciably to their commuting time.

[12] To the extent Plaintiffs wish me to draw inferences from the pay stubs attached to their opposition, those documents show that Plaintiffs were paid minimum wage.

[13] Because I am dismissing all of the claims against the Defendants, I need not address whether Cookston qualifies as an "employer" under the FLSA.

2d 545, 555 n.6 (S.D.N.Y. 2013); *see Bustillos*, 2014 WL 116012, at *2 ("[T]here is no indication that at any time Mr. Bustillos worked sufficient unpaid hours that his effective hourly wage fell below the minimum wage."), and Plaintiffs have provided no facts suggesting that that was the case here.  Nor do they provide facts suggesting that any off-the-clock work resulted in their working more than 40 hours a week.  *See Ramos v. City of N.Y. Fire Dep't*, No. 13-CV-9225, 2014 WL 2111687, at *5 (S.D.N.Y. May 9, 2014) ("[T]he FAC fails to allege any single plaintiff engaged in [off-the-clock] activities during a week that he or she worked more than 40 hours, or that these activities resulted in a single plaintiff working more than 40 hours in a week.")  The "FLSA requires only payment of minimum wages and overtime wages.  It simply does not consider or afford a recovery for gap-time hours." *Lundy*, 711 F.3d at 106 (cleaned up).

The FLSA claims are therefore dismissed.

### C.      State Law Claims

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that the only claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over the NYLL claims.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).

### D.      Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though

15

liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended their complaint, (Ahmed AC; Al Mamun AC), after having the benefit of a pre-motion letter from Defendants outlining the proposed grounds for dismissal, (Ahmed ECF No. 14; Al Mamun ECF No. 13), and the discussion at the pre-motion conference, (*see* Ahmed Minute Entry dated June 23, 2021; Al Mamun Minute Entry dated June 23, 2021). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up) (emphasis added); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from

the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, although Plaintiffs have asked to amend again, (Ps' Opp. at 14-16), they have not suggested that they are in possession of facts that would cure the deficiencies identified in this opinion, nor have they provided a proposed second amended complaint or otherwise explained how it would survive a motion to dismiss. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure pleading deficiencies in complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 6384067, at *2 (S.D.N.Y. Oct. 30, 2020) ("Plaintiff offers no explanation regarding the content of the proposed amendments, does not provide a copy of the proposed Fourth Amended Complaint, and does not explain how the amendments would not be futile (*i.e.*, would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).") (collecting cases).

Accordingly, the Court declines to grant leave to amend.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration is DENIED and Defendants' motion to dismiss is GRANTED.  The FLSA claims are dismissed with prejudice and the NYLL claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motions, (Ahmed ECF No. 32; Al Mamun ECF No. 31), and close both of the above-captioned cases.

**SO ORDERED.**

Dated: July 11, 2022
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.